Kevin AYRES, Vincent Camporeale Mary–Faith Cerasoli, Antonio Dasilva, Richard Duffy, Leah Fitshen, Luis Jerez, Walter Magnuson, Amy McCafferty, Robert McManus, Mark O'Callaghan, Christopher Palen, Todd Piorier, Humberto Ponce, Felipe Rodriguez, Jason Ruffo, Juan Seron, Matthew Talomie, and Roberto Virhuez, Plaintiffs,

v.

127 RESTAURANT CORP. d/b/a Le Madri Restaurant, Defendants.

No. 96 Civ. 1255 (DC).

United States District Court, S.D. New York.

June 16, 1998.

Gladstein, Reif & McGinniss, LLP by Beth M. Margolis, Yvonne Brown, New York City, for Plaintiffs.

Wachtel & Masyr, LLP by Michael S. Etkin, Howard I. Elman, New York City, for Defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

Plaintiffs, who are former or current members of the wait staff at Le Madri Restaurant, bring this action against defendant 127 Restaurant Corp. d/b/a Le Madri Restaurant pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., 203, 206, and the New York Labor Law § 196–d. They allege that Le Madri failed, among other things, to pay them the prevailing mini-

mum wage and overtime rate, and failed to reimburse them for the purchase and maintenance of their required uniforms. Plaintiffs further contend that defendant misappropriated their gratuities through "an involuntary tip sharing scheme," and that defendant retaliated against two of the named plaintiffs for participating in this lawsuit by firing them. (Am.Compl.¶ 1).

Plaintiffs move for partial summary judgment as to the tip-based claims. Defendants cross-move for partial summary judgment on various claims. For the reasons that follow, the cross-motions are granted in part and denied in part.

### A. Plaintiffs' Motion for Partial Summary Judgment

#### 1. Tip Pooling

Plaintiffs seek summary judgment on their gratuity claims, contending that Le Madri's practice of pooling tips earned by its wait staff and disbursing them centrally violated the New York Labor Law to the extent that Alain Elkaim, general manager of the restaurant, was permitted to share in the tips.

While tip-pooling is not per se illegal, see *Hartnett v. Wade–Mark Eleven, Inc.,* 156 A.D.2d 559, 549 N.Y.S.2d 69, 70 (2d Dep't 1989), N.Y. Labor Law § 196–d prohibits any "employer or his agent" from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee." An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The issue here is whether Elkaim was an employer or agent of an employer for purposes of this provision.

Plaintiffs are entitled to summary judgment on this claim as a matter of law for the period of January to December of 1995, during which time Elkaim received $20,000 in gratuities in addition to his weekly salary of $2,000. (See Pls. Exh. L). A reasonable jury could only conclude that Elkaim became an "employer or his agent" in January of

1995 when he was formally promoted to "general manager" or "manager of the restaurant" (Luongo Dep. at 366–67), the post formerly filled exclusively by Pino Luongo, the President of 127 Restaurant Corp.[1] The uncontroverted facts are that at that point Elkaim: (1) gained "full authority" to suspend or terminate employees, which he formerly could not do without first consulting Luongo (Luongo Dep. at 6); (2) supervised the wait staff and made hiring decisions; (3) assumed greater responsibility for the restaurant's budget, including analyzing payroll and food costs; and (4) received a salary of $2,000 per week, regardless of the number of hours he worked. While Luongo retained some "supervisor[y]" authority, the undisputed facts show that he had delegated the bulk of his management responsibilities to Elkaim by January 1995. (See Luongo Dep. at 61–62). Hence, defendant violated Labor Law § 196–d by permitting Elkaim to receive a portion of the wait staff's gratuities after January 1995.

██ There is, however, a triable issue of fact as to whether Elkaim was an "employer or agent" prior to January 1995 or whether he was merely a senior floor captain with more limited supervisory responsibilities during this period. The record reflects that he had considerable responsibilities prior to this time and signed employee documents as "manager" or "general manager." On the other hand, there are questions as to how much time Elkaim spent at the restaurant, the extent of his supervisory responsibilities before 1995, and whether he could make unilateral personnel decisions.

### 2. *Tip Credit*

██ Plaintiffs further move for summary judgment on the ground that defendant illegally took a "tip credit" against their hourly wage. The FLSA, as well as New York law, permits employers to take a tip credit against the wages of a "tipped employee"[2] by paying them a slightly lower hourly wage,[3] provided that "such employee has been informed by the employer of the provisions of [the law] and ... all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m).

Plaintiffs' motion is granted to the extent that Elkaim participated in the tip pool from January to December of 1995. Here, the undisputed facts indicate that the employees against whom a tip credit was taken did not retain all tips received between January and December of 1995 because a portion of their gratuities went to Elkaim. Defendant, therefore, failed to qualify for the tip credit during this time period. According to defendant's own practices, as a general manager Elkaim was not an employee "who customarily and regularly receive[d] tips." 29 U.S.C. § 203(m). Luongo testified in his deposition that neither he nor "the general manager" (nor any member of the "back-of-the house" staff) was to receive any tips, that had he known Elkaim was still in the pool as the general manager he "would have really done everything to ... stop him from collecting

---

1. *See People v. Ngan Gung Corp. d/b/a Silver Palace Restaurant*, No. 402708/95, slip op. (N.Y.Sup.Ct. Nov. 13, 1995) (holding that it was illegal for general manager and other managers of restaurant to share in waiters' tips); *see also NLRB v. Big Three Indus. Gas & Equip. Co.*, 579 F.2d 304, 309–10 (5th Cir.1978) (supervisors who had authority to "interview job applicants, grant time off, allocate overtime work, transfer employees and recommend wage increases" were employer's agents), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1501, 59 L.Ed.2d 773 (1979).

2. A "tipped employee" is one "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

3. The FLSA permits employers to take a tip credit up to 50% of the minimum wage except that the credit "may not exceed the value of tips

actually received by the employee." 29 U.S.C. § 203(m). New York law, however, permits only a credit of $1.35. *See* 12 N.Y.C.R.R. §§ 137–1.1–1.3. In this case, Le Madri took a tip credit against plaintiffs' wages in the amount of $1.35 per hour pursuant to the more restrictive state law. In opposing plaintiffs' motion, Le Madri argues that the FLSA is inapplicable because § 218(a) provides that no federal law or provision therein "shall excuse noncompliance with any ... State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter." This argument, however, is frivolous. The intent of § 218(a) is to require employers to abide by state law to the extent such a law sets a higher minimum wage, not to excuse employers from complying with any other requirements of the FLSA.

tips," and that when it was brought to his attention in 1996 that Elkaim still received tips, Elkaim was barred from the tip pool. (Luongo Dep. at 442–43). Similarly, Le Madri's Controller Jerry Bruinooge testified at his deposition that, in retrospect, he believed that Elkaim's participation in the tip pool violated state law. (*See* Bruinooge Dep. at 180).

Because Le Madri "d[id] not qualify for the tip credit [during this period], tips received by plaintiffs may not be considered as part of wages paid to them for purposes of satisfying defendant's minimum wage obligations." *Bonham v. Copper Cellar Corp.*, 476 F.Supp. 98, 102 (E.D.Tenn.1979). Accordingly, defendant must disgorge the amount of tip credit deducted from each plaintiff's wages during the period that the tip pool violated § 203(m).

### 3. *Wilfulness*

The next question is whether defendant acted wilfully so as to entitle plaintiffs to statutory liquidated damages. A violation of the New York Labor Law is wilful, warranting an award of 25% liquidated damages in addition to lost wages, where the employer "knowingly, deliberately, [or] voluntarily" disregards its obligation to pay wages. *P & L Group, Inc. v. Garfinkel*, 150 A.D.2d 663, 541 N.Y.S.2d 535, 537 (2d Dep't 1989). No finding of malice or bad faith, however, is necessary. *See In re CIS Corp.*, 206 B.R. 680, 689 (Bankr.S.D.N.Y.1997).

Under the FLSA, "double damages are the norm" unless a defendant shows that it acted in good-faith and that its conduct was lawful by providing "plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1987); *see Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir.1983) ("[e]mployers wilfully violate FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements."); 29 U.S.C. § 260.

Here, a reasonable jury could only find that Le Madri intentionally, or at least recklessly, permitted Elkaim to share in the wait staff's gratuities. Luongo denied under oath knowing that Elkaim continued to receive tips after January 1995, but stated that had he discovered it, he would have "done everything to stop it." (Luongo Dep. at 443). Bruinooge testified at his deposition that despite his general knowledge of the law and his awareness that as general manager Elkaim continued to receive a share of the wait staff's gratuities, he never reviewed the tip pooling practices at Le Madri to ascertain whether they were lawful. (*See* Bruinooge Dep. at 170) ("I didn't have a tremendous interest in the tips, other than the fact that I didn't pay out more than what we collected. . . . I had no interest in reviewing the tip pool"). Luongo and Bruinooge were the only individuals who signed paychecks in 1995. (*See* Bruinooge Dep. at 78). Had Bruinooge or Luongo made reasonable inquiries, they would have also learned that Elkaim continued to receive gratuities for a full year after becoming general manager. Moreover, diligent review would have showed that Elkaim's unlawful participation in the tip pool precluded Le Madri from legally claiming a tip credit. *See Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir.1995) (holding that violation of FLSA is wilful where employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the law").

Defendant attempts to create an issue of fact as to wilfulness by now asserting that it believed in good faith at the time that Elkaim was entitled to a portion of the gratuities as a member of the service team. Le Madri offers no evidence, however, that it made reasonable inquiries into the relevant law, or that it actually reviewed its own tip pooling practices, or that it relied on the advice of counsel as to the lawfulness of Elkaim's continued participation in the pool or Le Madri's entitlement to the tip credit in 1995. Defendant therefore has not provided evidence from which a reasonable factfinder could conclude that it acted in good faith. Accordingly, plaintiffs are entitled to the applicable liquidated damages for wilfully violating N.Y. Labor Law § 196–d and 29 U.S.C. § 203(m).

**B.** *Defendant's Motion for Partial Summary Judgment*

### 1. *Statute of Limitations*

▮ Defendant moves to dismiss the First and Second Claims for failure to affirmatively plead compliance with the applicable statute of limitations. In the alternative, defendant seeks to limit any ultimate finding of liability to events that occurred after February 21, 1994, arguing that the 2–year, rather than the 3–year, statute of limitations is applicable because its conduct was not wilful. *See* 29 U.S.C. § 255(a).

Defendant's requests are denied. First, the complaint reasonably apprises Le Madri of the basis and relevant time period for each of plaintiffs' allegations. Thus, Le Madri's effort to secure dismissal of the First and Second Claims is rejected. Second, because the uncontradicted record shows that Le Mardi acted recklessly, plaintiffs' tip credit and tip pool claims are governed by the 3–year statute of limitations for wilful violations. Similarly, it is premature to hold as a matter of law as to plaintiffs' remaining claims that no rational factfinder could conclude that defendant acted wilfully. Thus, at least for now, the 3–year statute of limitations applies.

### 2. *Uniform Purchase and Maintenance Costs*

▮ Defendant also seeks summary judgment as to plaintiffs' claims under N.Y. Labor Law § 652 and the FLSA, 29 U.S.C. § 206, that they are entitled to reimbursement for the cost of purchasing and cleaning their "uniforms." The "appropriate seasonal uniform" required of Le Madri employees consists of a white shirt, khakis, black shoes, and black socks. A tie, vest, and apron, which complement the outfit, are provided by Le Madri. Employees are informed that "[i]t is [their] responsibility to maintain [their] service attire: shirts crisp, lightly starched, pants clean and pressed, shoes polished and ties drycleaned when they become soiled." (Pl.Exh. C).

Both New York law and federal law require employers to compensate employees for the purchase and maintenance of required uniforms if the employees' expenditures for these purposes would reduce their wages to below minimum wage. Under New York law, a "required uniform" is

> clothing worn by an employee, at the request of an employer, while performing job-related duties or to comply with any State, city or local law, rule or regulation. It does not, however, include clothing that may be worn as part of an employee's ordinary wardrobe.

N.Y. Comp.Codes R. & Regs. tit. 12, § 137–1.7. Although the term "uniform" is not expressly defined under federal law, the U.S. Department of Labor has suggested certain guiding principles:

> If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress the garments chosen would not be considered to be uniforms.... On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work, e.g., where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms.

(DOL's Wage & Hour Field Operations Handbook § 30c12(f)).

Defendant's motion for summary judgment on these claims is denied. On this record, a reasonable juror could conclude that Le Madri's required outfit constituted a uniform. Although most of the articles of clothing at issue arguably "may be worn as part of an employee's ordinary wardrobe" and no specific brands are mandated, specific colors are required (black shoes and socks and white shirts), employees who forget certain items are not permitted to work (*see* Elkaim Dep. at 327), drycleaning costs for these items clearly are imposed on the employees, and most, if not all, of the plaintiffs had to purchase some or all of these items with their own funds. Defendant, in short, is not entitled to summary judgment on the uniform claims, as genuine issues of fact exist for trial.

 

### 3. *Cash Shortage Deductions*

Le Madri also moves for summary judgment on certain plaintiffs' claims that the restaurant improperly deducted amounts from their wages when cash shortages occurred. Plaintiffs Mary–Faith Cerasoli, Richard Duffy, Leah Fitschen, Todd Piorier, and Felipe Rodriguez all admitted during their depositions, however, that no such deductions were made from their paychecks. (*See* Cerasoli Dep. at 53; Duffy Dep. at 58; Fitschen Dep. at 32; Piorier Dep. at 46–47; Rodriguez Dep. at 88). Accordingly, this prong of the motion is granted and these individuals' cash shortage claims are dismissed.

### 4. *Retaliatory Termination*

Finally, defendant seeks summary judgment as to Kevin Ayres's and Matthew Talomie's claims under New York law and the FLSA that they were discharged because of their "participation as plaintiff[s] in the instant action." (Am.Compl.¶¶ 64, 66). New York Labor Law § 215 provides that "no employer ... shall discharge, penalize, or in any other manner discriminate against any employee because such employee has caused to be instituted a proceeding under [its provisions]." *See also* 29 U.S.C. § 215(a)(3).

The motion is granted, for the undisputed facts show that both Ayres and Talomie had voluntarily tendered their letters of resignation before the filing of this action. (*See* Talomie Dep. at 37, Def. Exh. V). Hence, they cannot show that they were discharged for filing this lawsuit. Although both employees were told approximately a week before their intended last day that their services were no long required, this does not undermine the fact that they departed willingly, and it certainly does not suffice to defeat summary judgment. *See Marshall v. Canada Dry Bottling Co.,* 593 F.2d 712 (6th Cir.1979) (plaintiff failed to state claim retaliatory discharge claim under FLSA where employer told employee to leave before intended resignation date).

### CONCLUSION

For the reasons explained above, the parties' cross-motions for partial summary judgment are granted in part and denied in part. The parties shall appear for a pretrial conference on July 10, 1998, at 3:30 p.m.

SO ORDERED.