Chu CHUNG, et al., Plaintiffs,

v.

The NEW SILVER PALACE RESTAURANT, INC., et al., Defendants.

No. 00 CIV. 7353(AKH).

United States District Court, S.D. New York.

Sept. 13, 2002.

James HR Windels, Davis, Polk & Wardwell, Katherine C. Strobos, Davis, Polk & Wardwell, Kenneth Kimerling, Asian American Legal Defense & Education Fund Inc., New York City, for Plaintiffs.

Jackie Chan, Pinney, Payne, Van Lenten, Burrell et al., Danbury, CT, for Defendants.

### MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

HELLERSTEIN, District Judge.

The New Silver Palace Restaurant in New York City's Chinatown, at the intersection of Canal and The Bowery and the entrance to the Manhattan Bridge, has offered restaurant and catering services to the public for many years: since August 1997, when it purchased the assets of the restaurant in the bankruptcy of the old Silver Palace and, before then, as the old Silver Palace Restaurant. The Silver Palace restaurants have been involved in almost continuous labor strife since 1995, reflected in lawsuits and proceedings in the New York Supreme Court, before the National Labor Relations Board, and in this United States District Court.

The particular issues now before me relate to the tip credit provided by section 3(m) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(m). May the restaurant pay less than a minimum wage to waiters if the waiters are required to share their tips with management? And should the individual defendants who re-

quired the tip sharing be considered "employers" under section 3(d) of the FLSA, 29 U.S.C. § 203(d), and thus be liable in damages to the plaintiffs? I hold in this decision that the FLSA was violated, and that the individual defendants are jointly and severally liable to the plaintiffs for damages provided by the Act.

The plaintiffs are waiters who were employed by the restaurant. Between August 1997, when the New Silver Palace Restaurant opened, and November 1999, the restaurant's waiters were required to pool their tips and share them, according to a formula, with one another, with the busboys, and with the members of management who were involved in managing the restaurant floor and who, because they wore business suits on the job, were known as "black jackets." Plaintiffs sued to recover the tips they were forced to share with management and for damages under various federal and state statutes, and for treble damages under RICO. After discovery, plaintiffs moved for summary judgment on their Third Claim for Relief, moving under section 3(m) of the FLSA, 29 U.S.C. § 203(m), against The New Silver Palace Restaurant, Inc., and four of its principals—defendants Jonathan Chiu, Foon Szeto, Yuk Yin Law, and Hau Moon Leung—to recover the difference between the reduced hourly wage they were actually paid because of the tip credit allowance, and the federally prescribed minimum wage. Plaintiffs also moved for summary judgment on their Fourth Claim for Relief under section 196–d of the New York Labor Law against only The New Silver Palace Restaurant, Inc., to recover the amount of tips they were required to share with management. At the conclusion of oral argument on June 25, 2002, I granted summary judgment to the plaintiffs on their Fourth Claim for relief on the issue of liability, reserving the issue of damages for further proceedings, and I reserved

decision on the Third Claim for Relief. I now grant plaintiffs' motion for summary judgment on the issue of liability on the Third Claim for Relief as well.

### A. Background

The dispute between the restaurant employees and management began in 1995, when the union that had represented the waiters and busboys at the old Silver Palace since 1980, Local 318 of the Restaurant Workers Union, challenged the legality of the tip-pooling arrangement at the restaurant. Under this arrangement, which had been in place for some time, all tips to waiters were pooled, and distributed to waiters, busboys and "black jackets." In the negotiations for a collective bargaining agreement, restaurant management insisted that the "black jackets" receive a larger share of the tip pool than they had received in the past. The Union adamantly refused, and argued that the practice was illegal under the New York Labor Law. A lockout of union employees resulted, from August 1993 to March 1994.

### B. Tip–Sharing Practices Found Illegal by New York Supreme Court and in NLRB Proceedings

In 1995, the union filed charges with the National Labor Relations Board, seeking, among other relief, an administrative ruling that management's proposal that waiters be required to give "black jackets" a share of the tip pool was an illegal object of bargaining because it was prohibited by section 196–d of the New York State Labor Law. Also in 1995, the New York State Attorney General sued the old Silver Palace and its management in Supreme Court, New York County, seeking an injunction prohibiting management of the Silver Palace from sharing in employees' tips, also under section 196–d.

On November 13, 1995, Justice Harold Tompkins of the New York State Supreme Court, New York County, granted an injunction preventing the Silver Palace "black jackets" from sharing in the waiters' tip pool. In his decision, Justice Tompkins ruled that because the management employees sharing tips at the Silver Palace included the General Manager of the restaurant and several part owners of the restaurant, the sharing arrangement was illegal under section 196-d of the New York State Labor Law. *People v. Ngan Gung Corp.*, No. 402708/95, at 4 (Supreme Ct., N.Y. County, Nov. 13, 1995) (slip opinion). Two months later, in a decision issued in February of 1996, NLRB Administrative Law Judge Steven Fish also concluded, inter alia, that the demand of management of the old Silver Palace that employees share their tips with "black jackets" violated section 196-d, and ordered the restaurant to bargain in good faith with the union and to cease all discrimination against the union or its members. *Ngan Gung Restaurant, Inc. and 318 Restaurant Workers Union,* Case No. 2–CA–26450, 1996 WL 33321324 (N.L.R.B. Div. of Judges Feb. 26, 1996) (unpublished opinion).

C. *Bankruptcy and the New Silver Palace Restaurant*

In January 1995, before the New York Supreme Court issued its injunction and before the NLRB issued its order, the old Silver Place filed for Chapter 11 bankruptcy protection. On December 8, 1995, the Bankruptcy Court appointed a trustee, finding that the management of the old Silver Palace could not be trusted with the responsibilities of a debtor in possession. After unsuccessful negotiations between union representatives, management, and the trustee to establish a new collective bargaining agreement, the bankruptcy court ordered the old Silver Palace closed on May 29, 1997. On July 24, 1997, the Silver Palace's assets were purchased at auction by defendants Jonathan Chiu and Richard Chan, the majority shareholder. A month later, on August 26, 1997, Chiu and Chan reopened the restaurant under the name the "New Silver Palace."

From the day the New Silver Palace opened, its management instituted the same tip-pooling arrangement as was in place at the old Silver Palace, so that "black jackets" shared in the waiters' tip pool. Just as at the old Silver Palace, the "black jackets" owned or controlled shares in the restaurant, served as its officers and on its board of directors, and had the power to hire and fire employees and set work schedules. The rulings of the New York Supreme Court and the NLRB were ignored. One waiter who objected was fired in March of 1999. Management created a rival union, the "New Silver Palace Restaurant Workers Association" (NSPRWA), and told the waiters that if they did not share tips with the "black jackets," the restaurant would close. One waiter who refused to sign a petition in favor of tip sharing also was fired.

D. *Managerial Authority and Ownership Interests of "Black Jackets"*

Seven "black jackets" shared in the waiters' tip pool. All had ownership interests in the New Silver Palace, directly or through their children or family; most were members of the board or officers; and at least four wielded substantial managerial authority, including the authority to hire and fire employees, set work schedules and sign checks. Plaintiffs' motion for summary judgment is directed against two of these four, defendants Yuk Yin Law

and Hau Moon Leung.[1] A description of these two, and of the two other defendants who were the General Managers of the New Silver Palace and against whom plaintiffs also direct their motion, follows:

### 1. *Jonathan Chiu*

Jonathan Chiu, with defendant Richard Chan, purchased the assets of the old Silver Palace in July 1997 after it had filed for bankruptcy in January 1995, and re-opened the restaurant under the name "New Silver Palace." Chiu owned or controlled approximately 33% of the shares of the restaurant, was Co-Chairman of the Board of Directors, and President and General Manager. Chiu testified at deposition that he was the most knowledgeable individual concerning hiring and firing procedures at the restaurant and its personnel decisions, had authority to sign checks, frequently reviewed the restaurant's business and accounting records, supervised the restaurant's bookkeeper, and dealt directly with its accountant. He was deeply involved in the administration and management of the business from the opening of the restaurant until his resignation as an officer and director in September of 2001.

### 2. *Foon Szeto*

■ Foon Szeto owned a substantial share of the New Silver Palace, having purchased shares in the corporation worth $100,000. Szeto was a member of the Board of Directors of the restaurant, was Co-Chairman of the Board of Directors, was President until July 29, 1999 and Vice-President thereafter (until January 17, 2001), had check-signing authority, and was responsible for fielding complaints by "black jackets" about service employees. Szeto also attended a meeting in 1997 with Jonathan Chiu and Richard Chan in which they discussed "black jacket" salaries.[2]

### 3. *Yuk Yin Law*

Yuk Yin Law was a shareholder of the restaurant (through his daughter), a member of its Board of Directors, and its Treasurer. As a "black jacket," he had substantial managerial responsibility over restaurant employees, and set waiter work schedules, assigned waiters to particular tables, and supervised employees on the floor of the restaurant. Law was intimately involved in the restaurant hiring processes, had the authority to fire waiters, and did in fact fire at least one waiter. Law also was responsible for keeping track of waiters' overtime hours on their time cards. Law had the authority to sign checks on behalf of the restaurant and, as a "black jacket," received a share of the waiters' tip pool from the opening

---

**1.** The other two who wielded substantial managerial authority were David Chin, a board member, Secretary, and a check and payroll check signatory, and Howard Chiu, the Treasurer and General Manager and a check signatory. The other three were Kwok Hung Hui, a board member and a check signatory; Daniel Ong, a shareholder and board member, and Tse Yu Cheung, a shareholder. All three were "black jackets." The five persons named in this footnote are defendants, but are not the objects of plaintiffs' motion for summary judgment.

**2.** Mr. Szeto states in his affidavit that he "never worked at the restaurant nor participated in the management of the restaurant." While a district court may not make credibility determinations in considering a motion for summary judgment, I may disregard Szeto's conclusory supporting affidavit because it directly conflicts with his prior deposition testimony concerning his managerial duties as President of the restaurant. *See Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").

of the restaurant until the practice was discontinued on November 7, 1999.

### 4. *Hau Moon Leung*

Hau Moon Leung was a shareholder (through his son), a member of the Board of Directors, and General Manager of day-to-day affairs of the restaurant. He also served as Sales Manager for the restaurant's banquet facilities and services. Along with Law, Leung hired and fired employees. Like Law, Leung was a "black jacket" and received a share of the waiters' tip pool.

### E. *Subsequent Proceedings Against The New Silver Palace Restaurant*

On November 20, 1998, Local 318, Restaurant Workers Union, again filed charges with the NLRB, alleging that the management of the New Silver Palace had discriminated against employees of the old Silver Palace who had been active union members by refusing to hire them for the new restaurant. In a decision dated August 30, 1999, NLRB Administrative Law Judge Howard Edelman found, after lengthy hearings, that the New Silver Palace had indeed discriminated against former union members and had unlawfully threatened union picketers and interfered with union activities in violation of sections 8(a) of the National Labor Relations Act ("NLRA"). *New Silver Palace Restaurant and 318 Restaurant Workers Union*, Case No. 2–CA–30820, 1999 WL 33453706 (N.L.R.B. Div. of Judges, Aug. 30, 1999) (slip opinion), *aff'd* 2001 WL 704392, 334 N.L.R.B. No. 44 (2001). Among other factual findings, ALJ Edelman found that Foon Szetu and Jonathan Chiu had been involved in meetings and negotiations with union leaders in 1997 concerning work arrangements and the role of the union at the new restaurant. *Id.* at 4. ALJ Edelman also noted that several of the employ-

ees of the old Silver Palace were told by defendant Yuk Yin Law that they would not be hired by the new restaurant if they were union members, and were discouraged from supporting the union. *Id.* at 5–6. Ultimately, ALJ Edelman found that the employment application process conducted largely by defendants Yuk Yin Law and Hau Moon Leung, with the supervision of defendant Jonathan Chiu, was a pretext to discriminate in hiring against union member employees of the old Silver Palace.

The union filed additional charges with the NLRB on April 27 and June 21, 1999 alleging that the New Silver Palace had retaliated against particular waiters for their union activity in violation of federal labor law. After evidentiary hearings held in December of 1999 and January of 2000, NLRB Administrative Law Judge D. Barry Morris found that the New Silver Palace management had engaged in unfair labor practices under sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("NLRA") by threatening and firing union members who picketed the restaurant and by filing a lawsuit in Supreme Court, New York County, seeking to enjoin the union picketing. *See New Silver Palace Restaurant & 318 Restaurant Workers Ass'n* Case No. 2–CA–32157, 2000 WL 33664320 (N.L.R.B. Div. of Judges, Aug. 23, 2000). Among other findings, ALJ Morris found that New Silver Palace employees who supported the union or participated in picketing of the restaurant had been threatened by defendants Yuk Yin Law and Jonathan Chiu, who each warned employees that their picketing would drive the restaurant out of business. *Id.* at 5.

While the union's administrative charges were pending, the Regional Director of the NLRB filed suit in this Court pursuant to section 10(j) of the NLRA seeking a temporary injunction preventing the New Sil-

ver Palace from continuing its unfair labor practices, including discrimination against former union members in hiring, and the threats against current employees who were active in the union. An evidentiary hearing was held before me concerning the requested injunction on January 19, 2000. I then issued an Order, dated January 19, 2000, granting the temporary injunction requested by the Regional Director, prohibiting any further discrimination or threats by New Silver Palace management against union supporters, requiring the hiring of employees who had suffered from the discrimination, and requiring that all tips left on tables by patrons belonged only to waiters and busboys, and were not to be shared with "black jackets." The practice of forced tip-sharing was stopped by management, presumably in light of the pending NLRB proceedings, as of November 8, 1999.

F. *The New Silver Palace Files for Chapter 11 Bankruptcy Protection*

■ By letter dated July 25, 2002, counsel informed me that The New Silver Palace Restaurant, Inc. filed a petition for reorganization under chapter 11 of the Bankruptcy Code. The automatic stay imposed by section 362(a)(1) of the Bankruptcy Code, 11 U.S.C. § 362(a)(1) affects only The New Silver Palace, Inc.; it does not apply to plaintiff's claims against the restaurant's non-debtor co-defendants. *See Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Sys., Inc.,* 235 F.3d 53, 58 (2d Cir.2000). Accordingly, I proceed to review the law and the evidence against the four individual defendants against whom plaintiffs bring their motion for summary judgment and, for the reasons stated below, I grant plaintiffs motion for summary judgment on their Third Claim for Relief. I hold that the New Silver Palace is not entitled to the credit for tips provided by FLSA § 3(m), 29 U.S.C.

§ 203(m), and that the four individual defendants are "employers" under FLSA § 3(d), 29 U.S.C. § 203(d), and are liable in damages to the plaintiffs, with the amount of damages to be determined in subsequent proceedings.

II. *Discussion*

A. *Summary Judgment Standard*

Summary judgment is warranted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, *Harlen Assocs. v. Village of Mineola,* 273 F.3d 494, 498 (2d Cir.2001), the non-moving party must raise more than just a "metaphysical doubt" as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen,* 273 F.3d at 499. There is no issue for trial unless there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The nonmoving party must thus come forward with competent evidence. As Rule 56(e) (Fed.R.Civ.P.) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not

rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.*

B.  *Undisputed Evidence Shows That Chiu, Szeto, Law, and Leung Were "Employers" Under Section 3(d) of the FLSA*

Section 3(d) of the FLSA, 29 U.S.C. § 203(d), defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." In interpreting this expansive definition, the Second Circuit has applied an "economic reality test" to determine whether a given individual should be held liable as an employer for violations of the FLSA. *Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 139 (2d Cir.1999). This test considers four factors to determine whether the individual exercised adequate control over the employees to charge him with responsibility for violations of their rights, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984)). No single factor is dispositive, for "economic reality is based on all the circumstances." *Id.* Moreover, the control exercised by an individual over employees need not be absolute and continuous to warrant a finding that the individual should be held liable for

violating the statute as an employer. "Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do[ ] not diminish the significance of its existence.' " *Id.* (quoting *Donovan v. Janitorial Servs., Inc.,* 672 F.2d 528, 531 (5th Cir.1982)).

In *Herman,* the district court held, and the court of appeals affirmed, that the fifty percent owner of a security services company, who had the authority to hire and fire security guard employees, was an "employer" under section 3(d) of the FLSA. The fifty percent owner controlled the company financially and had threatened to dissolve it if his directors were not implemented. *Id.* at 140.

Under any reasonable analysis, the economic reality of the ownership, corporate governance, management, and operations of the New Silver Palace is that Jonathan Chiu, Foon Szetu, Yuk Yin Law, and Hau Moon Leung also should be considered employers under section 3(d) of the FLSA, 29 U.S.C. § 203(d). The description of their roles earlier in this Opinion makes clear their personal and direct involvement in the employment affairs of the New Silver Palace. Jonathan Chiu and Foon Szetu were the major shareholders and the Co-Chairmen of the restaurant's Board of Directors. They negotiated with the union over tip-sharing with "black jackets," tried to install a friendly union, supervised the application process for hiring waiters, and held and exercised hiring and firing powers. They were "hands-on" officers and directors. Yuk Yin Law and Hau Moon Leung were also shareholders and directors of the New Silver Palace and, as General Managers of the restaurant floor, had direct supervisory power over the waiters, controlling their hiring and firing, and enforcing the restaurant's tip-sharing

policies. As "black jackets" themselves, they personally shared in the waiters' tips. The four were "employers" within the meaning of FLSA § 3(d).

C. *Defendants Not Entitled to Tip Credit Against Minimum Wage Because Waiters Forced to Share Tips with "Black Jackets"*

■ Section 3(m) of the FLSA, 29 U.S.C. § 203(m), allows an employer to pay tipped employees an hourly rate less than the federal minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage. *See* 29 U.S.C. § 203(m). The employer may take advantage of the tip credit if two conditions are satisfied: (1) the tipped employee "has been informed by the employer of the provisions of this subsection," and (2) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.*

Section 3(m) provides:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee ... shall be an amount equal to -

(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding two sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Thus, the statute allows an employer to deduct the amount of tips actually received by an employee from the hourly statutory minimum wage payable to that employee, up to a maximum deduction. The employer must pay each tipped employee an hourly cash wage of at least the amount required by section 3(m) to be paid on August 20, 1996, no matter how much the employee may earn in tips. As of August 20, 1996, the minimum wage was $4.25 an hour, and the tip credit could be as much as one-half, or $2.13 an hour. When, effective on and after September 1, 1997, the minimum wage rose to $5.15 an hour, the minimum cash wage for tipped employees of $2.13 was retained, and the maximum tip credit rose to $3.02 an hour. *See* 29 U.S.C. §§ 203(m) & 206(a) (1995, 1997). Therefore, in most of the period at issue in this litigation, on and after September 1, 1997, the New Silver Palace was entitled to credit, if it had complied with the law, up to $3.02 per hour of waiters' average tips against the minimum wage of $5.15. *See* 29 U.S.C. § 206(a).[3] However, in order to do so, management also must have satisfied the two stated conditions as to all employees against whom they claimed the

---

**3.** New York law, however, permitted a maximum tip credit of only $1.35 per hour against the minimum wage for the period between April 1, 1991 and March 31, 2000. 12 N.Y.C.R.R. § 137–1.4 (2002)

tip credit: (1) they must have informed the employee of the provisions of section 203(m), and (2) "all of the tips received by such employee [must] have been retained by the employee."

The evidence is disputed with regard to the first criterion, whether plaintiffs were given notice of the New Silver Palace's intent to take advantage of the tip credit. Even though defendants' affidavits on the giving of notice are vague and conclusory, the plaintiffs nevertheless were aware that management claimed the tip credit in order to justify the less-than-minimum-wage salaries they were paying.

The record is clear, however, as to the second criterion, for the forced sharing of waiters' tips with the "black jackets" violated that portion of the tip credit provision which requires that in order for an employer to be eligible for the tip credit, "all tips received by [a tipped] employee [must] have been retained by the employee."

■ The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage. *See, e.g. Reich v. Chez Robert, Inc.,* 28 F.3d 401, 404 (3d Cir.1994) (reversing district court's equitable reduction of employer's liability for full minimum wage where notice of intent to take tip credit was not given); *Martin v. Tango's Restaurant, Inc.,* 969 F.2d 1319, 1323 (1st Cir.1992) ("It may at first seem odd to award back pay against an employer ... where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced that requirement.")

Defendants argue that the tip-pooling arrangement was legal under section 3(m), which allows "the pooling of tips among employees who customarily receive tips." Defendants allege that because the "black jackets" traditionally received tips, and because they performed traditional service functions such as seating customers, delivering food and clearing tables, their receipt of a share of the tip pool did not violate section 3(m). However, defendants cannot ascribe to "tradition" that which has been adjudged to be illegal, and the practice of forced sharing of tips with management is such an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping.

New York Labor Law, § 196–d, provides that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Labor Law § 196–d (McKinney 2002). The statute excludes from its reach fixed service charges for banquets or other special events, and the sharing of waiters' tips with "a busboy or similar employee." *Id.*

The New York Supreme Court, New York County, has held that the tip sharing practice at the old Silver Palace was illegal under section 196–d, *People v. Ngan Gung Corp.,* No. 402708/95, at 4 (Supreme Ct., N.Y. County, Nov. 13, 1995) (slip opinion). Justice Tompkins held:

> [T]ip sharing with a host or captain can be legal or illegal depending upon the particular circumstances of the case. A host or greeter may be eligible for Tip Sharing .... However, Ted Chan was the general manager of the restaurant

and three of the managers were part owners of the restaurant. Under the circumstances, they are prohibited from sharing tips as the owner's agents under Labor Law § 196–d.

*Id.* at pp. 3–4.

As Justice Tompkins held, section 196–d clearly prohibits part-owner employees who wield such broad managerial authority as the "black jackets" did at both the old Silver Palace and the New Silver Palace, and who are thus clearly the "employer," from sharing tips. Also, just as at the old Silver Palace, most of the New Silver Palace "black jackets" were also officers of the corporation, who under the statute are expressly prohibited from sharing tips. Moreover, the violation of section 196–d is doubly egregious in this case, because the owners and management of the New Silver Palace had clear notice that both a New York Supreme Court Justice as well as an NLRB Administrative Law Judge had found the identical tip sharing arrangement at the old Silver Palace illegal under section 196–d, but nonetheless insisted on perpetuating the arrangement from the moment the New Silver Palace opened its doors.

The taking of shares of waiters' tips by defendants Yuk Yin Law and Hau Moon Leung and by the other "black jackets" with managerial authority and ownership interests violates the statutory condition that "all tips" received by the waiters and busboys be "retained" by the waiters and busboys. FLSA, § 3(m), 29 U.S.C. § 203(m); *see Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305, 308–09 (S.D.N.Y. 1998). In *Ayres,* Judge Chin held that the employee waiters had not retained all of their tips where a managerial employee of the defendant restaurant had been receiving a share of the pooled tips. *Id.* Judge Chin reasoned that where the management employee who shared tips was the employ-

er's agent, and therefore was precluded from receiving tips under section 196–d of the New York Labor Law, his receipt of tips necessarily prevented the other non-managerial service employees from retaining "all tips" as required by section 2(m).

In this case, the "black jackets" who received tips were part-owners of the restaurant, as well as agents of the owners, sat on the restaurant's Board of Directors, and exercised substantial managerial authority over the day-to-day operations of the restaurant. Yuk Yin Law and Hau Moon Leung were more than agents of the employer, as was the manager at issue in *Ayres;* they were the "employers" themselves. FLSA § 3(d), 29 U.S.C. § 203(d). Although section 3(m) provides that it "shall not be construed to prohibit the pooling of tips among employees who customarily receive tips," that exception cannot, under New York or federal law immunize a management tax on wages by requiring tip sharing. A "custom" that is illegal cannot qualify as an exception, for that would defeat the very purpose of the statute itself. *See Ayres, supra; Ngon Gung Corp., supra.*

Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips. *Cf. Martin,* 969 F.2d at 1323 ("[I]n a legislative compromise, Congress chose to allow employers a partial tip credit if, but only if, certain conditions are met."). Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

This does not mean that the tip credit should be lost if waiters decide to pool their tips, or even if management requires that waiters pool their tips, as long as management does not share in those tips.

Nor does it mean that the tip credit should be lost if management awards stock options or shares to long-serving captains who have been sharing in a waiters tip pool. I hold, in this case, that a tight management group that has long forced its employees to share tips with it, with indifference to rulings that this practice is illegal, should not be able to enhance its profits by forcing its tipped employees to share their tips with management while paying those employees less than minimum wage.

Accordingly, I hold that the New Silver Palace's reduction of the minimum hourly wage owed to tipped plaintiffs was unlawful under section 3(m) of the FLSA, 29 U.S.C. § 203(m). Employers Jonathan Chiu, Foon Szeto, Yuk Yin Law, and Hau Moon Leung are therefore liable for the difference between the full federal hourly wage as mandated by section 6(a)(1) of the FLSA, 29 U.S.C. § 206 (or $5.15 per hour), and the hourly wages actually paid to the plaintiffs for the hours they worked from the opening of the restaurant on August 26, 1997 through November 7, 1999.

### E. *Damage Calculations*

Among their supporting papers, the plaintiffs have provided a summary of the damages amounts to which they claim they are entitled based on the payroll records of the restaurant, personal records kept by particular plaintiffs, and the testimony of particular plaintiffs. The defendants contest the accuracy of these summaries. At this stage, the evidence before me is not sufficient to resolve these contested issues of fact and determine the precise amount of damages that should be awarded against the individual defendants. Therefore, I grant plaintiffs' motion for summary judgment on their Third Cause of Action for violation of the federal tip credit requirements as to liability only.

### III. *Conclusion*

For the reasons stated at oral argument held June 25, 2002, I granted plaintiffs' motion for partial summary judgment on their Fourth Claim for Relief. I found The New Silver Palace Restaurant, Inc. liable for violations of section 196–d of the New York Labor Law, but the evidence was insufficient to determine damage amounts on summary judgment.

For the reasons stated above, I grant plaintiffs' motion for partial summary judgment as to their Third Claim for Relief, and find individual defendants Jonathan Chiu, Foon Szeto, Yuk Yin Law, and Hau Moon Leung, liable for improper claim of the federal tip credit under 29 U.S.C. § 203(m) for the period from August 26, 1997 though November 7, 1999. The evidence is insufficient, however, to determine a precise damage award at this summary judgment stage.

The parties shall appear for a conference on October 3, 2002, at 9:45 a.m. to discuss further proceedings appropriate to this case.

SO ORDERED.