10-1884-cv
*Salim Shahriar et al. v. Smith & Wollensky*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2010

Docket No. 10-1884-cv

Argued:  June 6, 2011          Decided: September 26, 2011

_____

Salim Shahriar, Muhammad Islam, and Mary Harvey, on behalf of themselves and all others similarly situated, and Suhel Ahmed, Andrew Mellor, Maria Zayaruzny, Masud Ahad, Anthony Justin DeSouza, Nazaruddin Zaidan, Christopher Lee Robbins, Sebastian G. Joulain, Michael Mueller, Gous Uddin, Ron Elton Megason, Bobbi Kim, Nicholas Lee Mullins, Erasmo Dinninno, Matthew Alexander Wulf, Ishah Faith-Jannsen, Mahbub Malik, Raymond Taylor, Phyliss Lynn Spiece, Lawrence Larocca, Rbiai Ouazene, Pat Thuniljinda,

        *Plaintiffs-Appellees*,

                v.

Smith & Wollensky Restaurant Group, Incorporated, DBA Park Avenue Restaurant, Fourth Walls Restaurant LLC, DBA Park Avenue Restaurant,

        *Defendants-Appellants.*[*]

_____

Before:  NEWMAN, MINER, and LYNCH, <u>Circuit Judges</u>.

        Defendants-appellants appeal from a January 29, 2011 Order of the United States District Court for the Southern District of New York (Cedarbaum, *J.*) granting plaintiffs-appellees' motion for class certification, pursuant to Federal Rule of Civil Procedure 23, of their state law claims, in an action brought by former employees of defendant restaurant alleging (1) claims of failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*., ("FLSA"); (2) claims of failure to pay minimum wage and overtime in violation of the New York State Minimum Wage Act, New York Labor Law §§ 650, 663; (3) illegal pay deductions and deductions from gratuities in violation of New York Labor Law §§ 193, 196-d, 198-b; and (4) violation of the New York Labor Law's "spread of hours" requirement, New York Labor Law § 650, *et seq*., N.Y. Comp. Code R. & Regs. tit. 12, § 137-1.7, the District Court having exercised supplemental jurisdiction over plaintiffs-appellees' New York State Labor Law claims and found the requirements for class certification under Rule 23(a), (b)(3) satisfied.

        AFFIRMED.

_____

[*] The Clerk of the Court is directed to amend the official caption as set forth above.

GREGORY B. REILLY III, A. MICHAEL WEBER, Littler Mendelson, P.C., New York, New York, *for Defendants-Appellants.*

DANIEL MAIMON KIRSCHENBAUM, Denise A. Schulman, Charles Joseph, Joseph, Herzfeld, Hester & Kirschenbaum LLP, New York, New York, *for Plaintiffs-Appellees.*

Richard J. Burch, Bruckner Burch PLLC, Houston, Texas, *for Plaintiffs-Appellees.*

DEAN A. ROMHILT (Jennifer S. Brand, Associate Solicitor and Paul L. Frieden, Counsel for Appellate Litigation, *on the brief*; M. Patricia Smith, Solicitor of Labor, of counsel), Washington, D.C., *for the United States Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees.*

Justin M. Swartz (Rachel Bien and Mariko Hirose, on the brief), Outten & Golden LLP, New York, New York, *for Rebecca M. Hamburg, National Employment Lawyers Association, et al., San Francisco, California, as Amicus Curiae in Support of Plaintiffs-Appellees.*

MINER, <u>Circuit Judge</u>:

Defendants-appellants, Smith & Wollensky Restaurant Group, Inc. (d/b/a Park Avenue Restaurant), and Fourth Walls Restaurant LLC (d/b/a Park Avenue Restaurant) (collectively, "Park Avenue") appeal from a January 29, 2010, Order of the United States District Court for the Southern District of New York (Cedarbaum, *J.*) granting a motion for class certification made, pursuant to Federal Rule of Civil Procedure 23, by plaintiffs-appellees, Salim Shahriar, Muhammad Islam, and Mary Harvey (collectively, the "Plaintiffs"). Plaintiffs worked for Park Avenue as waiters at the Park Avenue Restaurant in Manhattan. On behalf of themselves and all others similarly situated, they filed a Complaint on January 4, 2008, and an Amended Complaint on July 28, 2008, alleging that Park Avenue violated the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), Pub. L. No. 75-718, ch. 676, 52 Stat. 1060 (1938), 29 U.S.C. §§ 201–19 (2006), by requiring waiters to share tips with tip-ineligible employees. Plaintiffs allege that Park Avenue also violated various provisions of the New York Labor Law by requiring servers to share tips with tip-ineligible employees and by failing to pay waiters for an extra hour's work when their

2

workdays lasted more than ten hours.  Plaintiffs' federal claims for relief were brought as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and a putative class action was brought with regard to Plaintiffs' New York State Labor Law claims.

On November 11, 2009, Plaintiffs moved to have their state law claims certified as a class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").  The District Court heard oral argument and orally granted Plaintiffs' motion on January 28, 2010.  In granting the motion, the court exercised supplemental jurisdiction over the Plaintiffs' New York State Labor Law claims and found that the requirements for class certification under Rule 23(a), (b)(3) had been met.

On February 11, 2010, Park Avenue filed in this Court, pursuant to Federal Rule of Civil Procedure 23(f), a petition for leave to appeal from the District Court's written January 29, 2010, interlocutory Order granting Plaintiffs' motion for class certification of their state law claims.  Over plaintiffs' opposition, we granted the petition for leave to appeal on May 14, 2010.  **[A 259–60]**  For the reasons that follow, we affirm the Order of the District Court certifying the class action.

## BACKGROUND

I.      Park Avenue's Alleged Practices

Defendant-appellant Smith & Wollensky Restaurant Group, Inc. ("Smith & Wollensky"), is a Delaware corporation with its headquarters in New York City.  Smith & Wollensky owned and managed Park Avenue Restaurant in midtown Manhattan.  Defendant Fourth Walls Restaurants LLC (d/b/a Park Avenue Restaurant) is a limited liability corporation with its headquarters in New York and owns and manages Park Avenue Restaurant.  Each plaintiff was employed by Park Avenue at the Park Avenue Restaurant as a "front waiter/captain" within three years of the filing of the Complaint.

Plaintiffs have alleged that Park Avenue's practices concerning tips violate federal and state law.  Park Avenue compensates servers pursuant to state and federal tip credits that permit

restaurant employers to pay tipped employees[1] a lower minimum wage as long as the employees earn a certain amount in tips. See 29 U.S.C. § 203(m) (2006); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.5 (2010) ("Tip allowance for food service worker").[2] The FLSA permits employers to take a tip credit up to 50% of the minimum wage except that the credit "may not exceed the value of the tips actually received by the employee." 29 U.S.C. § 203(m). Under New York Labor Law, as of January 1, 2011, however, employers are entitled to a tip credit of only $2.25. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 (effective Jan. 1, 2011) ("Tip credits").

Under the FLSA an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not "customarily and regularly receive tips." 29 U.S.C. § 203(m) (stating that the tip credit "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"). Thus, an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers. E.g., Myers v. Copper Cellar Corp., 192 F.3d 546, 550–51 (6th Cir. 1999) (noting its precedent that a host or hostess qualifies as a "'tipped employee[]'" because his or her work entails "sufficient customer interaction and table attendance duties" but concluding that a "salad maker" was not a tipped employee because a salad maker: had no "direct intercourse with diners, worked entirely outside the view of restaurant patrons, and solely performed duties traditionally classified as

---

[1] A "tipped employee" is one "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (2006).

[2] For most of the period relevant to the underlying action, the New York regulation regarding tip credits was N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.5. On December 14, 2010, this regulation was replaced by N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 (effective Jan. 1, 2011) ("Tip credits"). Under, § 146-1.3(b) "[a] food service worker shall receive a wage of at least $5.00 per hour, and credit for tips shall not exceed $2.25 per hour, provided that the total of tips received plus the wages equals or exceeds $7.25 per hour."

4

food preparation or kitchen support work"); Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (finding that it violates the FLSA for an employer to use a tip credit while requiring tipped employees to share tips with managers).

New York law similarly prohibits employers from requiring tipped employees to share tips with non-service employees or managers. N.Y. Labor Law § 196-d ("§ 196-d") (McKinney 2009) ("Gratuities") provides:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. . . . Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee.

By its plain terms, § 196-d bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service — i.e., employees who are not "busboy[s] or similar employee[s]" and employees who are managers or "agent[s]" of the employer. See Chan v. Triple 8 Palace, Inc. ("Chan II"), No. 03 Civ. 6048, 2006 U.S. Dist. LEXIS 15780, at *57 (S.D.N.Y. Mar. 31, 2006) (noting that plaintiffs may establish a violation of § 196-d by showing that they were required to share tips with individuals who were either "employers, owners, or managers" or simply "not waiters, busboys, or 'similar employees'"); see also Ayres v. 127 Restaurant Corp., 12 F. Supp. 2d 305, 307 n.1 (S.D.N.Y. 1998) ("While tip-pooling is not per se illegal, N.Y. Labor Law § 196-d prohibits any 'employer or his agent' from 'demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee.' An employer 'includes any person acting directly or indirectly in the interest of an employer in relation to an employee.' 29 U.S.C. § 203(d)." (internal citation omitted; alternations in original)); Tandoor Rest., Inc. v. Comm'r of Labor, No. PR-82-85 (Industrial Bd. of App. Dec. 23, 1987) (finding that defendant restaurant violated § 196-d by requiring service employees to share tips with managers and with clerical and kitchen staff who did not engage in "any meaningful aspect of direct service to customers").

Thus, 29 U.S.C. § 203(m) and § 196-d bar the same types of tipping practices, and actions that violate the tip pooling provision of 29 U.S.C. § 203(m) may also violate § 196-d. Plaintiffs contend that Park Avenue's tipping practices violate both 29 U.S.C. § 203(m) and § 196-d. According to the Plaintiffs, Park Avenue required servers to share their tips with "expediters," "dishwashers," "silver polishers," and "coffee makers." Plaintiffs allege that none of these employees had any direct contact with customers. These employees worked in the kitchen, which was on a floor of the restaurant to which customers did not have access. According to the Plaintiffs, at the Park Avenue Restaurant, expediters work in the kitchen relaying food orders to the cooks and making sure that food runners take the correct orders out of the kitchen; dishwashers wash dishes and various other service items; coffee makers prepare coffee; and silver polishers polish silverware and glassware.

Beginning in or around May 2007, Park Avenue also required servers to share tips with a person who Plaintiffs contend was a "manager" whose primary duties included supervising employees, interviewing job applicants, disciplining employees, running daily pre-shift meetings for servers, and scheduling employees. Plaintiffs claim that, because of the nature of a restaurant-wide tip sharing policy, the inclusion of a single tip-ineligible employee in that pool is a violation with respect to all waiters because every waiter would have shared tips with that ineligible employee. Plaintiffs contend that their claims brought under the FLSA and § 196-d depend on whether, given their job duties, expediters, dishwashers, silver polishers, coffee makers, and managers lawfully could be included in Park Avenue's tip pool and tip sharing scheme. Because all servers were required to share their tips with the same people, Plaintiffs contend that once factual findings are made in the District Court as to the duties of the positions in question, Park Avenue will either be liable or not liable to all servers under the FLSA and section 196-d of the New York Labor Law.[3]

---

[3] Although it does not affect the resolution of the issues in this case, the New York State Hospitality Industry Wage Order, which took effect on January 1, 2011, made various changes to practices in the food services industry. One such change is that employers may now require food service workers to participate in mandatory tip sharing or tip pooling. N.Y. Comp. Codes R. & Regs., tit. 12, §§ 146-2.15(b), 146-2.16(b) (Jan. 1, 2011).

Plaintiffs also contend that Park Avenue violated New York's "spread of hours" provision. That provision required employers to pay servers an extra hour's pay at the regular minimum wage for each day they work more than ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 (2010) ("On each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part.").[4]

II.    Prior Proceedings

On January 4, 2008, Plaintiffs filed a Complaint in the District Court. On July 28, 2008, Plaintiffs filed an Amended Complaint alleging (1) claims of failure to pay minimum wage and overtime in violation of the FLSA (Claims One and Two); (2) claims of failure to pay minimum wage and overtime in violation of the New York State Minimum Wage Act, New York Labor Law §§ 650, 663 (McKinney 2002) (Claims Three and Four); (3) illegal pay deductions and deductions from gratuities in violation of New York Labor Law §§ 193, 196-d, 198-b (McKinney 2009) (Claim Five); and (4) violation of the New York Labor Law's "spread of hours" requirement, N.Y. Comp. Code R. & Regs. tit. 12, § 137-1.7 (2010) (Claim Six).[5]

Following joinder of issue, plaintiffs filed a November 11, 2009 motion seeking an order from the District Court certifying the class of plaintiffs, as to their state law claims, pursuant to Rule 23. In support of their motion for class certification, Plaintiffs submitted declarations, deposition testimony, and documentary evidence that related to the entire period of time covered by the

---

[4] As of December 29, 2010, former N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 was replaced by N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6, which also requires employers to pay employees an extra hour's pay at the minimum wage when their workday lasts longer than 10 hours. Plaintiffs cite to N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 because it was effective for the entire class period.

[5] After the original Complaint was filed, four additional plaintiffs filed consent-to-sue forms, thereby asserting FLSA claims. By consent of the parties and with the District Court's approval, the Plaintiffs sent notice in 2008 of the FLSA claims to the waiters who worked for Park Avenue, providing an opportunity for them to join the lawsuit within the FLSA statute of limitations. As a result, 18 additional persons filed consent to sue forms, bringing the total number of plaintiffs to 25, all now named in the caption.

underlying action. The Plaintiffs submitted the evidence to demonstrate that (1) all purported class members were subject to the same tipping practices; (2) the expediters, dishwashers, silver polishers, and coffee makers with whom servers were required to share tips provided no direct customer service; (3) servers were required to share tips with a manager; and (4) Park Avenue did not provide spread of hours pay to servers.

At a hearing in the District Court on January 28, 2010, the court certified the class and explained its reasoning from the bench. As an initial matter, the court retained supplemental jurisdiction over the Plaintiffs' state law claims, noting its concern with the prospect of Plaintiffs having to refile their state claims in state court given the statute of limitations period. Specifically, the court stated that it would not dismiss the state law claims "unless I know that [the Plaintiffs] can do the same thing in state court that they can do here." Moreover, in allowing the state law class claims to coexist with the federal claims, the court also stated that "there is an interesting policy question involved" but that it was "too late in this case" and "too close to trial" to decline supplemental jurisdiction.

Second, the court turned to class certification under Rule 23. The court noted that sufficient numerosity existed in this case, as a class of 275 "is numerous enough." Fed. R. Civ. P. 23(a)(1). Next, the court accepted Plaintiffs' argument that there were "no individual issues that predominate over the class issues" and that "[t]he class issues are one and the same," thereby finding that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), (b)(3), and that the "claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3).

Park Avenue filed a petition for leave to appeal pursuant to Rule 23(f) on February 11, 2010, seeking permission to appeal the District Court's order granting Plaintiffs' motion for class certification.[6] A Panel of this Court granted that petition on May 14, 2010.[7]

_____

[6] By motion filed in the District Court on February 11, 2010, Park Avenue sought a stay of proceedings in the District Court pending the outcome of this appeal. That unopposed motion was granted by the court on March 15, 2010. Shahriar, et al. v. Smith & Wollensky, et al., No. 08-cv-

8

On appeal, Park Avenue challenges the District Court's decision granting class certification. Park Avenue contends that the court: (1) abused its discretion in exercising supplemental jurisdiction over the Plaintiffs' New York State Labor Law claims; (2) erred in its determination that the Plaintiffs' evidence sufficed to meet the standards for class certification under Rule 23; and (3) failed to make a ruling with respect to each requirement for Rule 23 class certification.

**ANALYSIS**

I.      Supplemental Jurisdiction Over Plaintiffs' State Law Class Claims

Before turning to the question of whether Rule 23 class certification was proper, we first must examine whether the District Court properly exercised supplemental jurisdiction over Plaintiffs' parallel state law class claims. We review a district court's exercise of supplemental jurisdiction for abuse of discretion. See Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist., 31 F.3d 89, 103 (2d Cir. 1994) (A "district court may, in its discretion, exercise supplemental jurisdiction.").

The FLSA was designed to protect workers and ensure that they are not subjected to working conditions "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being." 29 U.S.C. § 202(a) (2006). New York similarly enacted minimum wage standards to remedy the practice of persons working "at wages insufficient to provide adequate maintenance for themselves and their families," N.Y. Lab. Law § 650 (McKinney 2002), and it created standards regarding tipping in order to ensure that service employees receive all monies given as gratuities to them. See Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79 n.4 (2008). Victims of wage and hour violations therefore often have parallel claims

---

0057 (MGC), Document 63 (S.D.N.Y. March 17, 2010) (Memo Endorsed, Defendants' Notice of Motion for a Stay Pending Appeal).

[7] Federal Rule of Civil Procedure Rule 23(f) provides us with the authority to permit interlocutory review of a district court's class certification order. Fed. R. Civ. P. 23(f). Permission was granted by a previous panel of this Court, and we therefore have appellate jurisdiction to proceed with this appeal.

under both the FLSA and the New York Labor Law ("NYLL").

Under the FLSA, a plaintiff may bring a "collective action" for his or her FLSA claims. Collective actions under the FLSA are actions that allow employees to sue on behalf of themselves and other employees who are "similarly situated." 29 U.S.C. § 216(b) (2006). The FLSA requires, however, that an employee affirmatively consent to join a "collective action" in order to assert a claim. Id. ("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Thus, an employee fearful of retaliation or of being "blackballed" in his or her industry may choose not to assert his or her FLSA rights. Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation." (internal citations omitted)); Scott v. Aetna Services, 210 F.R.D. 261, 267 (D. Conn. 2002) (noting "the evidence that potential class members failed to join the FLSA class action because they feared reprisal"). See generally Sanft v. Winnebago Indus., Inc., 214 F.R.D. 514, 524 (N.D. Iowa 2003) (compiling cases holding Rule 23's numerosity requirement satisfied because, where some class members are still employed by the defendant, "concern regarding employer retaliation or reprisal renders individual joinder less practicable").

The NYLL, on the other hand, does not have a provision for collective actions. Instead, plaintiffs may pursue a traditional "opt-out" class action through class certification for their state law claims. A class action under the NYLL allows employees to recover lost wages without the risks attendant to asserting affirmatively an FLSA claim. See, e.g., Damassia, 250 F.R.D. at 152. Because

FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the NYLL claims as a class action under the district court's supplemental jurisdiction. This is what has occurred in this case. At issue before us is whether the District Court properly exercised supplemental jurisdiction over Plaintiffs' NYLL claims such that the Plaintiffs may proceed simultaneously with both their class action and collective action in federal court.

Park Avenue contends that it was an abuse of the District Court's discretion to exercise supplemental jurisdiction, arguing that Congress's intent in requiring that employees affirmatively opt-in to FLSA collective actions is undermined when employees bring a lawsuit alleging both a FLSA collective action and a Rule 23 class action (i.e., an opt-out class action) alleging state labor law claims. Park Avenue asserts that the inherent conflict between the two types of actions stems from the fact that the number of employees in the opt-out class will likely be much larger than the number in the opt-in collective action. Park Avenue claims that the dual actions are impractical, unfair, and "offensive to the structure of the FLSA" because those employees who do not opt-in to the FLSA collective action "could very well have their FLSA cause of action extinguished" as their FLSA claims will be adjudicated by the dual (state) action. We disagree.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367 ("section 1367"). Subsection (a) of section 1367 provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a) (2006). For purposes of section 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks omitted). Here, the NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since

they arise out of the same compensation policies and practices of Park Avenue. See, e.g., Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002) (exercise of supplemental jurisdiction was proper where plaintiff's state and federal claims arose "out of approximately the same set of events"). Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (emphasis supplied). In addition, we have stated that

> where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in [United Mine Workers of America v.] Gibbs, [383 U.S. 715, 726 (1966)]: economy, convenience, fairness, and comity.

Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004).

Subsection (c) of § 1367 provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if —
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2006).

"In providing that a district court 'may' decline to exercise such jurisdiction, [section 1367(c)] is permissive rather than mandatory." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (citing Marcus v. AT & T Corp., 138 F.3d 46, 57 (2d Cir. 1998); Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir.1996)). "As the Supreme Court stated in discussing § 1367's predecessor judicial doctrine of pendent jurisdiction, however, this is traditionally 'a doctrine of discretion, not of plaintiff's right.'" Kolari v. New York Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). "Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the

circumstances in which district courts can refuse its exercise.'" Id. (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).

Having concluded that the NYLL and FLSA claims form part of the same case or controversy, our analysis proceeds to section 1367(c), where the critical inquiry becomes whether one or more of the section 1367(c) factors is applicable, in which case the exercise of supplemental jurisdiction could be an abuse of discretion.

First, as to section 1367(c)(1), Plaintiffs' NYLL claims based on spread-of-hours pay and purported illegal deductions from tips do not appear to raise a "novel or complex issue of [s]tate law." Rather, the spread of hours claim will likely hinge on factual findings of (1) whether class members had workdays lasting more than ten hours and (2) whether Park Avenue paid class members an extra hour's pay at the New York minimum wage when their workdays lasted more than ten hours. See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 (2010). Plaintiffs' claim for illegal deductions from tips is also straightforward. That claim will turn on whether servers were required to share or pool tips with (1) agents of their employer (such as the Plaintiffs' manager) and/or with (2) employees who were not waiters, busboys, or similar employees (such as expediters, silver polishers, dishwashers, and coffee makers who allegedly provided no direct customer service). See N.Y. Labor Law § 196-d (McKinney 2009); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.14(e) (2011) ("[Tip-e]ligible employees must perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental."). Accordingly, we conclude that Plaintiffs' claims do not raise complicated or novel issues of state law for purposes of § 1367(c)(1).

Section 1367(c)(2) requires that a state law claim "substantially predominate" over a federal claim before a district court has discretion to refuse supplemental jurisdiction. See Itar-Tass Russian News Agency, 140 F.3d at 448. In adjudicating the federal claims, the District Court likely will determine whether the Plaintiffs were tip-eligible under the FLSA. Because the FLSA and the NYLL use a similar standard for making such a determination, and because each set of claims arise

from the same set of operative facts, a determination as to the FLSA claims may decide the Plaintiffs' NYLL claim as well. See 29 U.S.C.§ 203(m) (2006); New York Labor Law § 196-d (McKinney 2009).

Moreover, we agree with our sister circuits that the fact that there are more class members in the state law class action than those in the FLSA collective action "should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action, as section 1367(c) uses that phrase." Ervin v. OS Rest. Servs., Inc., 632 F.3d 971, 980 (7th Cir. 2011). "Predomination under section 1367 generally goes to the type of claim, not the number of parties involved." Id. (quoting De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 311 (3rd Cir. 2003)); see also Ervin, 632 F.3d at 981 ("[T]he disparity between the number of FLSA plaintiffs and the number of state-law plaintiffs is not enough to affect the supplemental jurisdiction analysis. In the majority of cases, it would undermine the efficiency rationale of supplemental jurisdiction if two separate forums were required to adjudicate precisely the same issues because there was a different number of plaintiffs participating in each claim."); accord Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761–62 (9th Cir. 2010) ("Although the number of claimants and amount of potential damages in the [state law] claim may have been higher . . . '[p]redomination under section 1367(c)(2) relates to the type of claim and here the state law claims essentially replicate the FLSA claims — they plainly do not predominate." (emphasis and alteration in original)). Indeed, any addition of plaintiffs in the certified state law class action does not change the factual determinations and claims made with regard to Park Avenue's practices. Accordingly, we conclude that the Plaintiffs' state law claims do not substantially predominate over their federal claims, over which the District Court has original jurisdiction, for purposes of § 1367(c)(2).

Third, section 1367(c)(3) is not applicable here because the District Court did not dismiss any claims over which it had original jurisdiction.

Fourth, as to whether there is a "compelling reason" under section 1367(c)(4) for the District Court to decline supplemental jurisdiction over the NYLL claims, Park Avenue argues that

14

class certification should have been denied "because of [an] inherent conflict" between opt-in collective actions under FLSA and opt-out class actions under NYLL. We reject this argument for several reasons. First, nothing in the language of the FLSA prevents the exercise of supplemental jurisdiction over Plaintiffs' state law wage claims. Section 216(b) of the FSLA provides that

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (2006). This section explicitly authorizes employees, on behalf of themselves and those similarly situated, to bring, under the FLSA, minimum wage, overtime, and anti-retaliation claims. Section 216(b) also provides that the FLSA consent requirement "applies only to wage claims brought under the substantive provisions of the FLSA" and does not apply to "wage claims generally." Damassia, 250 F.R.D. at 162. Accordingly, we do not read the plain language of § 216(b) as restraining any remedies available to employees under state law or as affecting a federal court's ability to obtain supplemental jurisdiction over state employment actions. See Ervin, 632 F.3d at 979 ("[T]he opt-in procedures in the FLSA do not operate to limit — expressly or impliedly — a district court's supplemental jurisdiction to only those state-law claims that also involve opt-in procedures.").

Second, the FLSA's "savings clause" makes clear that states may enact wage laws that are more protective than those that are provided in the act: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . ." 29 U.S.C. § 218(a) (2006). We have held that this clause demonstrates Congress' intent to allow state

wage laws to co-exist with the FLSA by permitting explicitly, for example, states to mandate greater overtime benefits than the FLSA. See Overnite Transp. Co. v. Tianti, 926 F.2d 220, 221–22 (2d Cir. 1991) (rejecting the argument that the FLSA preempts state wage laws); see also Ervin, 632 F.3d at 977 (same); Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1151 (9th Cir. 2000) (stating that section 18(a) indicates that the FLSA is not the exclusive remedy for wage payment claims). Further, interpreting the above provisions of the FLSA to bar employees' access to federal courts to seek class-wide remedies for alleged substandard working conditions "detrimental to [their] . . . health, efficiency, and general well-being," 29 U.S.C. § 202(a) (2006), would be inconsistent with the stated purpose of the FLSA.

Third, the legislative history surrounding the FLSA's opt-in provision also provides no support for precluding joint prosecution of FLSA and state law wage claims in the same federal action. Originally, § 216(b) permitted an employee to bring a collective class action on behalf of similarly situated employees but did not expressly require unnamed plaintiffs to opt-in to the action. See Fair Labor Standards Act of 1938, 52 Stat. 1060, 1069 (1938). Then, in 1947 Congress added the opt-in provision through passage of the Portal-to-Portal Act (the "Portal Act"). See Portal Act, § 1, 61 Stat. 84, 84–85 (1947). The Portal Act made clear that the opt-in requirement "shall be applicable only with respect to actions commenced under the [FSLA] of 1938." Id. § 5(b), 61 Stat. at 87. However, the Portal Act contains no suggestion of any intent to prevent class certification or any prohibition of the exercise of supplemental jurisdiction over state wage law class claims. See Regulating the Recovery of Portal-to-Portal Pay, and for Other Purposes, H.R. Rep. No. 80-71 (1947); Exempting Employers from Liability for Portal-to-Portal Wages in Certain Cases, S. Rep.No. 80-48 (1947); Portal-to-Portal Act of 1947, H.R. Conf. Rep. No. 80-326 (1947). We do not view Congress's creation of the opt-in provision for FLSA collective actions as a choice against, or a rejection of, Rule 23's opt-out process for state law class actions. See Ervin, 632 F.3d at 977 ("There is ample evidence that a combined action is consistent with the regime Congress has established in the FLSA.").

Finally, our sister circuits in the Seventh, Ninth, and District of Columbia Circuits all have determined that supplemental jurisdiction is appropriate over state labor law class claims in an action where the court has federal question jurisdiction over FLSA claims in a collective action. See Ervin, 632 F.3d at 973–74, 978 (looking to the plain language of the FLSA and concluding that (1) "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA"; and (2) "if these actions were to proceed separately — the FLSA in federal court and the state-law class action in state court — an entirely different and potentially worse problem of confusion would arise, with uncoordinated notices from separate courts peppering the employees."); Wang, 623 F.3d at 761 (concluding that "it was within the district court's discretion to exercise supplemental jurisdiction over the [state law class claim because] . . . [t]he [state] claim does not pose novel questions of state law akin to those present in De Asencio"); see also Lindsay v. Gov't Employees Ins. Co., 448 F.3d 416, 424–25 (D.C. Cir. 2006) (holding that the opt-in collective action provision of FLSA did not expressly prohibit the exercise of supplemental jurisdiction over the New York Minimum Wage Act claims of opt-out class members and, therefore, that the district court could exercise supplemental jurisdiction over the New York Minimum Wage Act claims of class members).

Accordingly, we agree with the Seventh Circuit that "while there may in some cases be exceptional circumstances or compelling reasons for declining jurisdiction, the 'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction under section 1367(c)(4)." Ervin, 632 F.3d at 980.

The only circuit court decision declining supplemental jurisdiction over state labor law class claims in an action where the court has federal question jurisdiction over FLSA claims was the Third Circuit's decision in De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (2003). In De Asencio, employees at chicken-processing plants brought a representative action in the district court alleging that their employer violated minimum wage and overtime provisions of the FLSA as well as the Pennsylvania Wage Payment and Collection Law (WPCL). See id. at 304. The district court granted

17

class certification to the employees for their state labor law (WPCL) claims. See id. at 305.

On appeal, the Third Circuit held that although the district court did not abuse its discretion by ruling that FLSA and WPCL actions arose from same controversy and shared a common nucleus of operative facts, 28 U.S.C. § 1367(a), the district court should not have exercised supplemental jurisdiction over the WPCL claim, which presented novel and complex questions of state law and which substantially predominated over the FLSA claim within the meaning of 28 U.S.C. § 1367(c)(1), (c)(2) (2006). See De Asencio, 342 F.3d at 309 ("Generally, a district court will find substantial predomination where a state claim constitutes the real body of a case, to which the federal claim is only an appendage — only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." (internal quotation marks omitted)). Specifically, the Third Circuit explained that

> certain issues of state law presented in the WPCL action also weigh heavily, tilting the balance against the exercise of supplemental jurisdiction. Pennsylvania courts have not addressed two novel and complex questions of state law squarely presented here: whether a WPCL action may rest on an implied employment contract that relies on alleged oral representations by Tyson managers; and whether the WPCL pertains to at will, non-collective bargaining employees. The need to resolve these issues, which are better left to the Pennsylvania state courts, weighs in favor of declining supplemental jurisdiction. 28 U.S.C. § 1367(c)(1).

De Asencio, 342 F.3d at 311.

We conclude that De Asencio is distinguishable from this case and the other circuit cases that have dealt with the dual action question in that De Asencio involved a complex question of state law rendering supplemental jurisdiction inappropriate under section 1367(c)(1). Its rationale was premised on a case-specific analysis of supplemental jurisdiction rather than on a general prohibition of exercising supplemental jurisdiction over state labor law class claims in an FLSA action.[8] Accordingly, "De Asencio represents only a fact-specific application of well-established

---

[8] The Third Circuit nevertheless recognized that the "interest in joining the [FLSA and WPCL] actions is strong as well." De Asencio, 342 F.3d at 310. Examining the "crucial" distinction "between opt-in and opt-out classes," the Third Circuit noted that "aggregation affects the dynamics for discovery, trial, negotiation and settlement, and can bring hydraulic pressure to bear on defendants. The more aggregation, the greater the effect on the litigation." Id. Ultimately, the Third Circuit recognized the opt-in scheme for FLSA actions as a "policy decision" by Congress and

18

rules, not a rigid rule about the use of supplemental jurisdiction in cases combining an FLSA count with a state-law class action." Ervin, 632 F.3d at 981; see also Wang, 623 F.3d at 761–62 (distinguishing the facts of De Asencio). Accordingly, we find no abuse of discretion in the District Court's decision to exercise supplemental jurisdiction over the NYLL claims in this case. See Ervin, 632 F.3d at 980 ("[W]hile there may in some cases be exceptional circumstances or compelling reasons for declining jurisdiction, the 'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction under section 1367(c)(4).").[9]

II.     Rule 23 Class Certification of the State Law Claims

A district court's decision regarding class certification under Rule 23 is reviewed for abuse of discretion. See In re IPO Secs. Litig., 471 F.3d 24, 31–32 (2d Cir. 2006) ("Provided that the district court has applied the proper legal standards in deciding whether to certify a class, its decision may only be overturned if it constitutes an abuse of discretion." (internal quotation marks omitted)). We have stated that "the abuse-of-discretion standard has regularly been applied in reviewing a district judge's conclusions with respect to individual requirements of Rule 23 both by this Court and by other Circuits." Id. at 32 (internal citations omitted) (collecting cases). An appellate court, however, is "noticeably less deferential . . . when [the district] court has denied class status than when it has certified a class." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999) (internal quotation marks omitted), overruled on other grounds by In re IPO Secs. Litig., 471 F.3d at 40.

"A district court vested with discretion to decide a certain matter is empowered to make a

stated that the Court would not "tout the relative merits of either approach" as it proceeded to a straightforward supplemental jurisdiction analysis under section 1367(a), (c). Id.

[9] Moreover, as noted above, even if one of the four statutory bases were applicable, it would still be error to decline supplemental jurisdiction where exercising it would promote the values of economy, convenience, fairness and comity identified in United Mine Workers of America v. Gibbs. As is implicit in our discussion above, requiring plaintiffs to bring a separate action in state court to assert their state law claims would result in duplicative litigation and present an additional risk of confusion on the part of potential class members who would receive notices of both actions.

19

decision — of its choosing — that falls within a range of permissible decisions." Parker v. Time Warner Entm't Co., L.P., 331 F.3d 13, 18 (2d Cir. 2003) (emphasis in original; internal quotation marks omitted). "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions." Id. (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 168–69 (2d Cir. 2001) (footnotes omitted; omission in original)). In contrast, *de novo* review is "review without deference," id., and is "traditionally associated with appellate assessments of a district court's legal conclusions." Id.

"With these principles in mind, the standard of review applicable to class certification decisions can be succinctly summarized as follows: 'We review class certification rulings for abuse of discretion. We review de novo the district court's conclusions of law that informed its decision to deny class certification.'" Id. (quoting Turner v. Beneficial Corp., 242 F.3d 1023, 1025 (11th Cir. 2001)).

Rule 23(a) provides that

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> > (2) there are questions of law or fact common to the class;
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> > (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). In addition, "[a] class action may be maintained if Rule 23(a) is satisfied and if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b).

As to the role of the district court in making a determination that the foregoing requirements

20

of Rule 23 have been met, we have held that

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

In re IPO Secs. Litig., 471 F.3d at 41; see also id. at 42 ("A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."). In deciding a motion for class certification under Rule 23, "the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Id. at 41. While we have made clear that the district court must make these determinations, we have not required that the district court utilize any particular verbal formula, nor that the district court make express findings on each requirement. Where the basis of the district court's ruling is obvious in context, we will not reverse a class certification simply because the district court has not explicitly recited each finding.

Citing to In re IPO Secs. Litig., Park Avenue argues that we should reverse the District Court's January 29, 2010, Order certifying the state law claims as a class action because the Plaintiffs have failed to meet, by a preponderance of the evidence, the evidentiary requirements for Rule 23 class certification. Park Avenue argues that the District Court "neither addressed each requirement for Rule 23 class certification nor made a separate ruling as to each requirement." We disagree. Here, both the record and the transcript of the January 28, 2010, hearing in the District Court provide us with the ability to determine that the District Court did not abuse its discretion in certifying the class action as to the state law claims.

21

First, as to the requirement of numerosity, Rule 23(a)(1), the District Court found, and the parties do not appear to dispute, that the class includes approximately 275 people. Accordingly, we have little difficulty in agreeing with the court that the numerosity requirement is satisfied. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (stating that numerosity is presumed where a putative class has forty or more members).

Second, we conclude that the District Court properly found there to be questions of law or fact common to the class, Rule 23(a)(2), since the Plaintiffs' NYLL class claims all derive from the same compensation policies and tipping practices of Park Avenue. Further, all of the class plaintiffs' claims arise under the same New York State statutes and regulations.

Third, with regard to whether the claims of the representative parties are typical of the claims of the class, Rule 23(a)(3), the District Court recognized that if certain individuals who are tip-ineligible employees are found to have been included inappropriately in the tip pool, such a determination would affect every plaintiff and "would result in everybody else getting something more." Indeed, the parties do not appear to dispute that Park Avenue's tipping practices affected every plaintiff during the time period in question. The District Court's observation in this respect is sufficient to uphold its determination that commonality and typicality are satisfied. **[A 277–78]** See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]ypicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."); Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding commonality and typicality easily satisfied where all class members were subject to the same policies regarding their employers' distribution of a service charge). Moreover, Plaintiffs submitted declarations and deposition testimony regarding the tip pool structure, as well as tip-out sheets that show that all Class Members were subject to the same tipping policies of Park Avenue. Plaintiffs also submitted payroll records produced by Defendants that show a common policy and practice of

22

not paying the spread of hours premium. We conclude that the District Court properly found the elements of commonality and typicality satisfied.

As to whether the "representative parties will fairly and adequately protect the interests of the class," Rule 23(a)(4), the Plaintiffs provided the District Court with adequate representation that the class representatives are prepared to prosecute fully the action and have no known conflicts with any class member. Accordingly, although there was no express finding by the District Court as to the adequacy of the representative Plaintiffs for the class, there is nothing in the record to suggest that the class representatives are inadequate. Moreover, if, for some reason it is later determined by the court that the representative Plaintiffs are inadequate, the court could substitute another class plaintiff for the representative plaintiff in question or simply allow the remaining representative Plaintiffs to proceed with the class action. See Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC, 504 F.3d 229, 241 (2d Cir. 2007) ("[W]e note that only one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class.").

Finally, as to Rule 23(b)(3)'s requirement that class-wide issues predominate over individual issues, Plaintiffs have alleged that all servers were subject to Park Avenue's uniform tip-sharing or tip-pooling system. That is, all servers who worked for Park Avenue at a given time allegedly were required to share their tips with the same tip-ineligible person(s) (e.g., a manager). Park Avenue has not denied that all servers were subject to its uniform tip practices, and Plaintiffs support the allegation that all class plaintiffs were subject to the same uniform tip practices with their submission of tip-distribution sheets with their motion for class certification. If Plaintiffs succeed in showing that the expediters, silver polishers, coffee makers, and/or managers were not eligible to receive tips under New York law, then each of the class plaintiffs will likely prevail on his or her section 196-d claims, although class plaintiffs' individualized damages will vary. We conclude from the record before us that the District Court's finding that common questions predominate over any individualized damages issues is fully supported. E.g., In re Visa Check/MasterMoney Antitrust

23

Litig., 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").

Accordingly, we conclude that the Plaintiffs provided ample and sufficient evidence as to the elements of Rule 23(a)(1)–(4) and Rule 23(b)(3) for us to uphold the District Court's findings and conclusions with respect to each of the Rule 23 requirements.

## CONCLUSION

In accordance with the foregoing, we affirm the Order of the District Court certifying the New York State law claims.