22-1070-cv
Brown v. Vitucci

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of April, two thousand twenty-three.

PRESENT:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> ROSEMARY S. POOLER,
> ROBERT D. SACK,
> *Circuit Judges.*

_____

Linford A. Brown, Jr.,

> *Plaintiff-Appellant,*

Crown Acquisition Holding Corp.,

> *Plaintiff,*

> v.                                                                    **22-1070**

**Christopher Vitucci, B.C.A. Leasing, Ltd., B.C. Benjamin Auto Sales, Inc., Det. Manuel F. Nash, Det. Glen T. Kenah, individually and in their professional capacity, County of Nassau,**

*Defendants-Cross-Claimants-Cross-Defendants-Appellees.*[*]

_____

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | Linford A. Brown, Jr., pro se, Valley Stream, NY. |
| **FOR DEFENDANTS-CROSS-CLAIMANTS-CROSS-DEFENDANTS-APPELLEES CHRISTOPHER VITUCCI AND B.C.A. LEASING, LTD.:** | Scott H. Mandel, Esq., LaBonte Law Group, PLLC, Jericho, NY. |
| **FOR DEFENDANT-CROSS-CLAIMANT-CROSS-DEFENDANT-APPELLEE B.C. BENJAMIN AUTO SALES, INC.:** | No appearance. |
| **FOR DEFENDANTS-CROSS-CLAIMANTS-CROSS-DEFENDANTS-APPELLEES DET. NASH, DET. KENAH, AND COUNTY OF NASSAU:** | Robert F. Van der Waag, Stephen Carlin, Samantha A. Goetz, Deputy County |

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Attorneys, *for* Hon.
Thomas A. Adams,
Nassau County
Attorney, Mineola, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hurley, *Judge*; Shields, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Linford A. Brown, Jr., proceeding pro se on appeal, brought this action in connection with a dispute over his lease of a Bentley after two Nassau County detectives arrested him for unauthorized use of a vehicle. He named the two detectives as defendants, along with Nassau County; two companies associated with the lease; and the companies' owner, Christopher Vitucci, whose police report led to Brown's arrest. A magistrate judge recommended granting summary judgment to the defendants on Brown's 42 U.S.C. §§ 1981, 1983, 1985, and 1986 and state-law claims, and denying Brown's cross-motion for summary judgment on those claims. The district court adopted that recommendation in

3

substantial part, except that it declined to exercise supplemental jurisdiction over

Brown's state law contract and quasi-contract claims. We assume the parties'

familiarity with the underlying facts, the procedural history of the case, and the

issues on appeal.

We review a grant of summary judgment de novo.[1] *Garcia v. Hartford Police*

*Dep't*, 706 F.3d 120, 126 (2d Cir. 2013) (per curiam). "Summary judgment is

proper only when, construing the evidence in the light most favorable to the non-

movant, 'there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344

(2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A decision declining to exercise

supplemental jurisdiction is reviewed for abuse of discretion. *See Shahriar v.*

*Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011). "[W]e liberally

construe . . . briefs submitted by pro se litigants, reading such submissions to raise

the strongest arguments they suggest."[2] *McLeod v. Jewish Guild for the Blind*, 864

---

[1] Brown does not raise any separate arguments about the denial of his cross-motion for summary judgment.

[2] Because Brown was represented by counsel in the district court, however, his district court filings are not entitled to the same liberal construction.

F.3d 154, 156 (2d Cir. 2017) (per curiam) (citation omitted).

I.    **Section 1981**

Brown, who is African American, alleges that the detective defendants interfered with his right to enjoy the benefits of his lease in violation of § 1981, which "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).   To avoid summary judgment on a § 1981 claim, there must be a genuine dispute as to whether the defendants "inten[ded] to discriminate on the basis of race."   *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).

Brown argues that this discriminatory intent may be inferred from the detectives' conduct because, he maintains, they did not carefully investigate whether he was legitimately in possession of the Bentley or whether a portion of the lease that Vitucci showed them was forged, and they interrogated him after he retained counsel.   We disagree.   No reasonable jury could draw an inference of racial discrimination from these facts alone; absent some evidence that the defendants acted differently toward people who are not African American, the

5

mere fact that they may have acted negligently or wrongfully toward an African American person does not suggest racial animus. Brown has not identified any evidence, direct or circumstantial, that suggests any intent to discriminate based on his race. Accordingly, because there is no genuine dispute of material fact as to discriminatory intent, the district court properly granted summary judgment to the detectives on Brown's § 1981 claim.

## II. Section 1983

### A. False Arrest

In analyzing § 1983 false arrest claims, we generally look to the tort law of the state in which the arrest occurred. *Russo v. City of Bridgeport*, 479 F.3d 196, 203, 208 (2d Cir. 2007). Probable cause is an absolute defense to a false arrest claim in New York. *See Broughton v. State*, 37 N.Y.2d 451, 458 (1975). "Probable cause exists when an officer has knowledge of facts and circumstances sufficient to support a reasonable belief that an offense has been or is being committed." *People v. Maldonado*, 86 N.Y.2d 631, 635 (1995) (internal quotation marks and citation omitted). In determining whether there was probable cause, the Court must consider the totality of the circumstances, reviewing "plainly exculpatory

6

evidence alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (internal quotation marks and citation omitted). This standard does not "demand that an officer's good-faith belief that a person has committed a crime be 'correct or more likely true than false.'" *Mara v. Rilling*, 921 F.3d 48, 69 (2d Cir. 2019) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

The district court correctly determined that the detective defendants had probable cause to arrest Brown. As relevant here, a person is guilty of unauthorized use of a vehicle in the third decree under N.Y. Penal Law § 165.05(3) when that person has possession of a vehicle pursuant to an agreement to return it to the owner at a specified time, but intentionally retains possession without the owner's consent "for so lengthy a period beyond the specified time as to render such retention . . . a gross deviation from the agreement." Vitucci's statements gave the detectives a reasonable basis to believe that Brown committed this crime. Vitucci affirmed that his company owned the Bentley and leased it to Brown; Brown had defaulted by missing the past eight monthly payments on the lease;

the lease had converted to a weekly rental upon the default; Vitucci had demanded the Bentley's return; and Brown still had the Bentley despite lacking permission to use it. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (holding that information from a putative victim that a crime was committed can establish probable cause "unless the circumstances raise doubt as to the person's [reliability or] veracity" (citation omitted)). Vitucci supported his statements by showing the detectives a lease agreement.

Brown argues that he faxed evidence showing his innocence to the Nassau County Police Department, in the form of the lease agreement and a copy of a check. But that information was not obviously exculpatory. Even if the police knew the check was delivered and applied only to then-future payments, it was still for less than Brown owed under the lease between the check's date and the date the fax was sent. And even if—as Brown argues—an addendum in the version of the lease that Vitucci presented was both necessary to establish probable cause and was a forgery, there is no evidence a reasonable officer would have had reason to believe the document was inauthentic. Finally, Detective Nash's decision not to arrest Brown during their first interaction does not establish a lack

8

of probable cause; a police officer is not required to make an arrest in every instance where there is probable cause to believe a crime has occurred. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 759–62 (2005) (discussing the "well established tradition of police discretion" over whether to make an arrest).

## B. Property Seizure

Brown next argues that the detective defendants are liable for a violation of his due process rights in connection with the Bentley's seizure, because they reported the Bentley as a stolen vehicle in a police database, resulting in its later seizure by a New Jersey police department. Assuming without deciding that the report established personal involvement in the initial seizure sufficient for liability, the district court was nonetheless correct to conclude that there was no underlying constitutional violation because there existed probable cause for the Bentley's initial seizure for the same reasons there was probable cause for Brown's arrest. *See Brown*, 460 U.S. at 742 (probable cause to seize property exists when "the facts available to the officer would warrant a [person] of reasonable caution in the belief that [the seized] items may be contraband or stolen property or useful as evidence of a crime" (internal quotation marks and citation omitted)).

9

## C.     Equal Protection

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."  *Hayden v. Paterson*, 594 F.3d 150, 162 (2d Cir. 2010) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976)).   Brown argues that the detective defendants would have treated him differently if he was not African American.   But, as already discussed, he does not identify any evidence from which a reasonable jury could so conclude.   Accordingly, the district court properly granted summary judgment to the detectives on Brown's § 1983 equal protection claim.

## D.     Municipal Liability

To prevail on a § 1983 claim against a municipality, a plaintiff must demonstrate the existence of a municipal policy, custom, or practice that caused a claimed constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978).   The district court properly granted summary judgment to the County on Brown's *Monell* claim because he did not show that a constitutional violation occurred, pursuant to a municipal policy or otherwise.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

10

### III. Sections 1985 and 1986

The district court also properly granted summary judgment to the defendants on Brown's §§ 1985(3) and 1986 claims. To prevail on a § 1985(3) claim, a plaintiff must show, among other things, a conspiracy "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (internal quotation marks and citations omitted).

As discussed above, there is no evidence that the detective defendants had such a motivation. As to Vitucci and the two companies, Brown argues that racial animus may be inferred because they had never pursued criminal charges against another lessee. That is not a reasonable inference, because Brown does not point to any evidence that the defendants' other lessees were of different races or—if they *were* of different races—evidence that they were similarly situated in other respects. Brown also appears to argue that racial animus may be inferred because these defendants acted wrongfully toward him by forging the lease addendum, presenting it to the police, and accepting the Bentley following its seizure. But even assuming that these were all wrongful acts (and that Brown has preserved

11

these arguments), the fact that a wrong was directed at a person of a particular race does not, without more, reasonably suggest the wrongdoer was motivated by the victim's race. In the absence of a viable § 1985 claim, Brown's § 1986 claim also fails. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (explaining that "a § 1986 claim is contingent on a valid § 1985 claim").

## IV. Abandonment of State Claims

In his appellate brief, Brown challenges the magistrate judge's recommended disposition of his state contract and quasi-contract claims, but not the district court's decision to instead decline to exercise supplemental jurisdiction over these claims. He has thus abandoned any challenge to that decision.[3] *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995) (treating issue not raised in pro se appellate brief as abandoned). Brown also has not challenged on appeal the district court's ruling that he abandoned his other state claims. Accordingly, those claims are also abandoned. *See id.*

---

[3] In any event, a district court may decline to exercise supplemental jurisdiction over state law claims after it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). We perceive no abuse of discretion in the district court's decision to decline to exercise supplemental jurisdiction here.

12

## V.    Judicial Bias

Finally, to the extent that Brown argues that the magistrate judge and district court were biased against him, "judicial rulings alone almost never constitute a valid basis" for questioning a judge's impartiality, and we see no reason to find improper bias here.    *Liteky v. United States*, 510 U.S. 540, 555 (1994).

\*    \*    \*

We have considered Brown's remaining arguments and find them to be without merit.    Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13